UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRAIG E. RICHARDSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10926** |
| **PLAQUEMINES PARISH DETENTION CENTER, ET AL.** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is the **Motion to Dismiss (Rec. Doc. No. 17)** filed by the defendants, CorrectHealth Plaquemines, LLC, and Annette Logsdon seeking dismissal of plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6). The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.      Factual and Procedural Background**

When this complaint was filed, the plaintiff Craig E. Richardson was an inmate housed in the Plaquemines Parish Detention Center ("PPDC") in Point-a-la-Hache, Louisiana.[1] Richardson filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 against the defendants, the PPDC, PPDC Warden Denise Narcisse, Plaquemines Parish President Kirk Lapine, CorrectHealth Plaquemines, LLC, Plaquemines Parish Sheriff Gerald A. Turlich, and Annette Logsdon, RN, alleging that he was denied adequate medical care for a urinary tract infection.

---

[1] Rec. Doc. No. 1 (Deficient Complaint); Rec. Doc. No. 8 (Complaint).

Richardson alleges in his complaint that, in October of 2018, he contracted a urinary tract infection while housed in the PPDC.[2] He claims that he was not given timely medical care or antibiotics or taken to the hospital. He also alleges that he urinated blood and the condition lasted until November of 2018.

Richardson also indicated in the complaint that he named Annette Logsdon and CorrectHealth as defendants because they run the medical unit at PPDC and provide the medical care within the jail. He also named Denise Narcisse because she is the warden and was aware of his condition. He named Kirk Lapine because he is responsible for the prison operations. He named Sheriff Turlich as a defendant because he supervises the employees at the jail. As relief, he seeks compensation for his pain and suffering and punitive damages for his unspecified handicap condition.

## II.     Standards of Review

### A.     Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.

---

[2]Rec. Doc. No. 8.

1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

  **B.** **Motions Under Fed. R. Civ. P. 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which relief may be granted. To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards while still guided by the *Iqbal* pleading requirements. *High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. Jun. 12, 2019). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court further explained this standard in the prisoner context:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, at 713-14. Because of this, before dismissing a prisoner complaint under Rule 12(b)(6), a district court ordinarily should give the *pro se* litigant an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

### III.   Frivolousness Review

#### A.   Plaquemines Parish Detention Center

Richardson named the PPDC as a defendant because that is where he was housed when he allegedly was denied adequate medical attention. However, the jail itself is not a proper defendant, and the claims against it must be dismissed as frivolous.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights under color of law. 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989). Under federal law, a county or parish prison facility simply is not recognized as a "person" within the meaning of the statute. *Douglas v. Gusman*, 567 F. Supp.2d 877, 892 (E.D. La. 2008) (Order adopting Report and Recommendation) (citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3rd Cir. 1973)); *Cullen v. DuPage County*, No. 99-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97-0420, 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).

In addition, a parish prison is not a proper defendant because it lacks capacity to sue or be sued as required by Fed. R. Civ. P. 17(b). An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). Although the

5

Louisiana courts have not ruled on the issue of whether a parish jail is a suable entity, this Court must look to Louisiana law to determine if a jail can itself be sued.

To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. Louisiana law, however, divides the responsibility for its parish jails. The parish is charged with its jails' physical maintenance, La. Rev. Stat. Ann. § 15:702, and the sheriff of each parish has the duty to administer and operate the jails, La. Rev. Stat. Ann. § 15:704. The office of sheriff is a constitutionally created office in Louisiana, existing separately from the parish government. La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2nd Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff). Thus, in Louisiana, jail facilities are not "legally empowered to do" anything independently of either the respective parish officials or the parish sheriff. *See Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994).

In addition, this Court also has held that "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp.2d at 892. In other words, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174 (E.D. La. Aug, 10, 2015).

6

For these reasons, the PPDC is not a person or suable entity to be held liable under § 1983. The claims against the PPDC are frivolous and otherwise fail to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

**B.    Sheriff Turlich, Warden Narcisse, and Parish President Lapine**

Richardson has named Sheriff Turlich, Warden Narcisse, and President Lapine as defendants asserting that they each had a supervisory position over the employees and operations of PPDC. His claims are frivolous.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like the Sheriff, Warden, and Parish President, cannot be held liable pursuant to § 1983 under any theory of respondeat superior or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").

Instead, a defendant would be liable under § 1983 only if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980). Richardson does not allege that either the Sheriff or the Parish President was personally involved in any aspect of his medical care at PPDC or that either defendant violated a particular right or was aware of the facts alleged in this complaint. While he vaguely claims that Warden Narcisse was

aware of his condition, he does allege that she personally was involved in the medical care (or any alleged delay in medical care) or otherwise denied him medical attention.

Richardson also has not alleged that he suffered any constitutional violation or physical injury directly resulting from any order, policy, or directive implemented by the Sheriff, Warden, or Parish President to create a vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). He instead only broadly contends that CorrectHealth employees at the jail delayed his medical care. This is not sufficient to prove personal or supervisory liability against the Sheriff, Warden, or Parish President.

For these reasons, the claims against Sheriff Turlich, Warden Narcisse, and President Lapine are frivolous and otherwise fail to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

### C. CorrectHealth and Nurse Logsdon

Richardson named CorrectHealth and Nurse Logsdon as defendants they are in charge of the medical unit at PPDC and provide the medical care at the jail. To the extent Richardson intends to hold the defendants liable in a supervisory capacity over the medical unit employees, his claims are frivolous for the reasons cited above for the other supervisory officials.

CorrectHealth and Logsdon, even as a private provider of medical care on behalf of the prison officials, cannot be held liable under § 1983 for actions of their subordinates or employees on a theory of respondeat superior. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *see Phoenix v. Lafourche Parish Govt.*, No. 19-13004, 2020 WL 3269114, at *8 (E.D. La. Jun. 17, 2020). Instead, there must be an individual basis for liability under § 1983.

CorrectHealth is a private entity that acts under color of state law in contracting with the municipality to provide medical services to prisoners at PPDC. *Phoenix*, 2020 WL 3269114, at *13; *Grandpre v. CorrectHealth*, No. 16-1543, 2016 WL 4539442, at *8 (E.D. La. Aug. 29, 2016) ("The Court first recognizes that CorrectHealth is the private corporation contracted to operate the medical services within JPCC, and the company and its employees are subject to liability as state actors under § 1983."), *adopted*, 2016 WL 4987265 (E.D. La. Sept. 19, 2016); *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) ("[P]rivate corporations performing traditional state functions, such as the provision of medical services to prison inmates, act under color of state law for purposes of § 1983."); *accord Watson v. Jefferson Parish Corr. Ctr.*, No. 19-0911, 2019 WL 1318198, at *2 n.3 (E.D. La. Mar. 6, 2019), *adopted*, 2019 WL 1316400, at *1 (E.D. La. Mar. 22, 2019) (citing *Grandpre*). For purposes of § 1983 claims, CorrectHealth is treated as a municipality or parish. *Id*. Thus, CorrectHealth would be liable under § 1983 if the alleged violation of Richardson's rights was the result of the unconstitutional implementation or execution of a CorrectHealth policy, directive, or custom. *Monell*, 436 U.S. at 663 & 690-91; *see Bowen v. Watkins*, 669 F.2d 979, 989 (5th Cir. 1982) (a municipality is liable under *Monell* only if constitutional tort results from the execution of a policy or custom of the municipality). Richardson has not alleged that any such policy or custom was involved in the alleged delayed medical care. He presents no basis of liability against CorrectHealth except as the entity "responsible for medical care."[3] This is insufficient to state a claim against CorrectHealth under § 1983. His claims against CorrectHealth as the employer of others in the medical unit is frivolous.

As for Nurse Logsdon, liability under § 1983 exists for her as the head of the medical unit only if she was "personally involved in the acts causing the deprivation of his constitutional rights

---

[3]Rec. Doc. No. 8, at p. 5.

or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit*, 641 F.2d at 346; *see also Watson*, 611 F.2d at 123. Richardson's complaint does not indicate that Logsdon was involved in his care. He simply names her as the person "in charge of medical."[4] Even if she was involved in his care, his complaint fails to allege a non-frivolous claim of intentional indifference to his medical needs.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle*, 429 U.S. at 104-105. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id*. Thus, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to

---

[4]*Id*.

evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

Richardson's alleges that he did not receive timely care for his urinary tract infection, the condition lasted from October to November of 2018, and he urinated blood. However, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993)). Regardless of the length of the delay, the plaintiff must show deliberate indifference to a serious medical need that resulted in substantial harm. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 422 (5th Cir. 2017); *Easter*, 467 F.3d at 463. A plaintiff must allege or establish deliberate indifference by showing that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. The pain suffered during a delay in treatment or an increase in the risk of infection can constitute a substantial harm and form the basis for an award of damages. *Id*. at 422-23.

Even if Richardson's complaint could be read to include a one-month delay in providing care, that is not sufficient to state a claim against Logsdon. *See Addison v. McVea*, No. 13-5264, 2015 WL 3966104, at  (E.D. La. Jun. 15, 2015) (one-month delay by prison's nursing staff in requesting an appointment was the result of negligence and there was no evidence that it was intentional or amounted to the level of deliberate indifference). Richardson has not alleged that Logsdon was intentionally indifferent to his medical care. He simply states that his care was not timely. He has not alleged that Logsdon caused the delay, was personally involved in his care, or that she intentionally disregarded his need for care to a serious condition. Without something more than merely an alleged delay, Richardson's claims against Logsdon are frivolous.

For these reasons, the mere delay, if any, attributable to the health care unit or its employees is insufficient to state a non-frivolous claim against Logsdon as the supervisor or CorrectHealth as the employer. Richardson's claims against these defendants should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

## IV. Defendants' Motion to Dismiss (Rec. Doc. No. 17)

Defendants CorrectHealth and Logsdon filed the motion to dismiss Richardson's claims against them because Richardson's prison medical records establish that he received adequate and timely medical care.[5] Richardson did not file an opposition to defendants' motion.[6] In light of the Court's recommendation that the complaint be dismissed pursuant to its statutory frivolousness review, the motion should be dismissed without prejudice as moot.

## V. Recommendation

It is therefore **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 17)** filed by defendants CorrectHealth Plaquemine, LLC, and Annette Logsdon be **DISMISSED WITHOUT PREJUDICE** as moot.

It is further **RECOMMENDED** that Craig E. Richardson's § 1983 claims against the defendants, Plaquemines Parish Detention Center, Warden Denise Narcisse, Parish President Kirk

---

[5]Rec. Doc. No. 17. The defendants also argued in the motion that any "state law" claims are premature because Richardson did not exhaust state medical malpractice review. Richardson's complaint does not include a claim under state law, even when broadly construed. He does not mention negligence or malpractice in describing the delayed medical care he received. To the extent a reviewing court may find such a claim was asserted, it is recommended that the Court decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. 1367 in light of the dismissal of all federal claims. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

[6]On May 7, 2020, the Court had the clerk mail a copy of defendants' motion (Rec. Doc. No. 17) to Richardson when the Court obtained a current address for him. On June 23, 2020, the Court also provided Richardson with another opportunity to file an opposition to the motion. Rec. Doc. No. 20. He has not filed a response.

Lapine, CorrectHealth Plaquemine, LLC, Annette Logsdon, and Sheriff Gerald A. Turlich, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this __12th__ day of August, 2020.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.